All right. Are both sides ready to proceed? Yes, your honor. Mr. Heidernfeind, you may proceed. Good afternoon, your honors, learned justices of this panel. Good afternoon to the attorney representing the state and the members of the gallery, including the parents of the defendant, Esteban Avila, who are here today. My name is John Heiderscheidt. I represent Mr. Esteban Avila and his petition for post-conviction relief. And I'm respectfully asking that this court vacate the order denying our petition for post-conviction relief and remand with further instructions to vacate the conviction in 18 CF5 and provide the defendant with a new trial. The nature of my argument stems from ineffective assistance of counsel, and there are three specific points of ineffective assistance of counsel that I wish to raise with this court today. The first is a failure to investigate an alibi. The second is a waiver of a jury trial without investigating an alibi. The third is stipulating to circumstantial hearsay evidence that made up a majority of the state's circumstantial case in chief. And if the justices today are not persuaded by any one of those points, I ask the court to consider the doctrine of cumulative error as it applies to all three. Before discussing these points, I feel that it's important for the court to have a basic recitation of the factual circumstances that led to the charge in this case. In the early morning hours of December 31st, 2017, my client and a number of other people were attending a house party. At that house party, my client got into a fight with another member there who was attending the house party. He left the residence. He went home. Sometime after the defendant left the house party, gunshots fired into the home where the defendant and many others had been enjoying their house party. There were no eyewitnesses to the crime. In fact, the court, the state, and defense counsel all agree at different points during the proceedings, both active and post-conviction, that this case was circumstantial in nature and that there was no direct evidence linking my defendant, linking the defendant to the charges of aggravated discharge or aggravated battery with a firearm. Police went to the home where the shots were fired. They collected the evidence they could. They then, based on statements that were given to them at the party, went to the home of my client, Mr. Esteban Avila, where he was. In our post-conviction petition, we provided two witnesses who saw Mr. Esteban Avila at his home at the time that the shooting was alleged to occur. The first was his brother, Jose A. Avila, Sr. The second was the mother of his children, Sarah Markechik. I hope I'm pronouncing that right. While Mr. Avila's brother had had prior encounters with the law, Ms. Markechik had none. In fact, at one point, Ms. Markechik was employed by the same county office investigating my client in these charges. Both of those witnesses testified that at the time of the shooting they had seen my client at home in the basement with a swollen face, bloody jaw, badly beat up from the fight that he was in. I would submit to the court that if those things are true and that my client was in his home at the time the shooting occurred, he couldn't also be at the place of the shooting. Unfortunately, Defendant's Trial Council chose not to investigate my client's alibi claims. Well, didn't he speak to the mother? He spoke to the mother, but the mother was never present at the home for the alibi. The alibi witnesses were the mother of the children, Sarah Markechik, not Mr. Avila's father, Linda Avila, who he did speak to, and Jose Avila, Sr. Sarah Markechik testified at her post-conviction hearing, or at the post-conviction hearing, that Ms. Avila couldn't have alibied him because she was down the street. That's, in fact, where she had to take her two children because Mr. Avila was not capable of caring for them in the state that he was in. We provided a number of cases in our brief for the court to consider, seven circuit cases, first district cases, Illinois Supreme Court cases, and although they're not cited in the brief, I would refer this court to People v. Dillard, 204 ELAP 3D7, as another third district binding case on this point. When defense counsel is aware of a potential alibi, they have an ethical and professional obligation to investigate that alibi, and the crux and the core of the problem here is that the evidence that we have from Attorney Morelli is not that it was a matter of trial strategy to choose between an alibi defense and between a reasonable doubt proposition. The error here, the reversible error here, is that the defense counsel never investigated that. Isn't there a counsel question in the record based on Mr. Morelli's testimony and his record log with regards to whether or not he was aware of the other witnesses? I believe you're referencing the deposition testimony when he states that, when he's talking about his practice to collect and answer and receive calls. Is that right, Justice Albright? Yes, and also he reviewed his office records that there was no documentation of any records received. Well, that is what he stated. My response to that would be twofold. One, he never provided those records at the deposition or brought them, and perhaps more and testified. She approached him in the courthouse and directly, in person, said, I'm an alibi witness. I'd like you to speak with me about this, and Mr. Morelli brushed it off and would not consider it. Again, what I was trying to get at before that excellent question, Justice, is it was not a matter of trial strategy here to decide I'm going to stand on the presumption of innocence because that's a better route than the alibi. The error here, why we're asking for a new trial here, is the alibi defense was never investigated. Except the issue with regards to whether alibi defense was never appropriately investigated and what knowledge he had with regards to specific alibi witnesses, isn't that a matter of credibility that we have to leave to the trial court? Well, a couple of things, Justice. The trial court's ruling on July 6, 2023, never gets into credibility issues, per se. They never make the ruling about whether one is more credible than the other as witnesses. I think this is a really important point. Even the trial court acknowledged in its ruling on July 6 that alibi had been discussed with Mr. Avila and Mr. Morelli and Mr. Morelli decided he wasn't going that way. The problem is that Mr. Morelli's letter to Mr. Avila says, and this is the second or third paragraph of the second page, you tell me you have an alibi defense. I have no knowledge whether this is true or false. And the rest of the record reveals that Mr. Morelli took no steps to investigate whether that alibi was true or false. And when we consider the waiver of the jury trial, the jury trial right is one of the most sacrosanct rights in the United States. As far back as the United States Supreme Court case Duncan v. Louisiana 391 U.S. 145, a seven-justice majority held in the syllabus the first point that the jury trial is one of the most fundamental and one of the most fundamental structural protections a criminal defendant has. And when we get back to the deposition, Justice Albrecht, that you brought up, and the state cites to this in their statement of facts, Attorney Morelli said that he didn't want to get rid of the current judge because he felt of the two judges it was six of one and half a dozen of the other was the comment that he made in the deposition. And I think what he's trying to get across was he didn't think that either judge would be particularly favorable on the issues that he was discussing with his client. Let me ask a question. Back to this alibi issue. At the hearing, wasn't there confusion on the part of Jose and McCarzick in terms of the actual date? Didn't they get the date wrong? Well, Judge, in their affidavits, they say December 31st. I recognize the affidavits, but the testimony? Sure, Judge. The affidavits say December 31st, 17. The testimony is January 1st, 2018. My response to that would be that based on the context of what we know about the case, it would be more appropriate to let a trier of fact sift through whatever issues there may be in that particular mix-up, rather than to say, because your attorney didn't investigate an alibi and waived your jury trial right before failing to investigate an alibi, we're not ever going to submit this to jurors to decide. Would that not be relevant to the credibility of the alibi witnesses in terms of whether they ever had that conversation with Mr. Morelli in the first place? Certainly, the state may choose to bring that up in cross-examination at a future date. With regards to the judge's ruling, he didn't put any particular emphasis on that. The judge's ruling from July 6th focuses on there was a discussion between them about alibi versus reasonable doubt, and he chose to go reasonable doubt. That's the judge's ruling, Your Honor. I hope that answers that question. Then, Judge, I want to focus on when we look at when the original case was appealed to this court, an unpublished opinion, 2021 ILAP 3D 180727U, People via VLAW, paragraph 14. The court held specifically that all of the information that was presented in the case in chief prepared by the state was circumstantial in nature. The judge in his ruling on the day of trial before even post-conviction, this was circumstantial in nature. The state, in its closing argument and opening, it's circumstantial in nature. And then we need to focus on so much of the state's case, and they argue this in their introduced. Well, that circumstantial hearsay that was never objected to, it was just stipulated to come in. And the state, in its closing argument, refers to that evidence as its best evidence, talks about the tightness of the timeline, how it couldn't be anything else. I failed to see where the strategy was in stipulating to the entry of those videos rather than objecting to them on hearsay grounds. Particularly where one of the videos had an almost six-hour discrepancy with what's stated on the picture of the video as the time, and when the time of the actual shooting is supposed to take place. And when one of the videos is admitted, the foundation is stipulated to where a witness, a principal of a high school, gets video from a building across the street from the high school. And certainly an attack on foundation hearsay could have changed the outcome of this case if those were attacked in this way, particularly if it was presented to a jury. Even taking the point, Your Honor, about the mix-up in dates, we can clearly show from the context of the arrest of the investigation when those two witnesses are talking about. Was there really a dispute about the timing of the shooting? I mean, as a general matter. It was in short proximity to your client leaving the house. Is there any dispute about that? What I would offer for the court is that the state argued in closing argument that it occurred at 7.37 a.m. I'm not posturing to the court that I think it happened at 9.15 or 4 in the afternoon. The factual piece that was never introduced, that was never brought up, that was never discussed and that was most important is not when the shooting occurred, but who was the shooter and where was Esteban Avila when the shooting occurred? Those are the two biggest questions. And the ineffective issue is the failure to object and to require the foundation, etc. Agreed, Your Honor. And it seems clear to me if I read this court's opinion, the unpublished opinion from the direct appeal that only challenged sufficiency of evidence. And if I look at the statements from the representatives of the state, the court and defense, it seems clear that those pieces of evidence made up a huge crux of this case. And but for the entry of those items, or but for the cross-examination and picking away at those items, we could have seen a very different result. Judges, I see that I'm close to my time here and I certainly want to observe the red light. Are there any questions I can answer? What about the shell casing that was in the snow on the roof of the vehicle? Well, the shell casing, I'm so glad you bring that up, Your Honor, is because the shell casing has female DNA evidence on it. We learned from the investigation that there's DNA profiles of more than two people. And what's even more curious is if you look at the docket sheet for the case, there was an attempt to file a motion to suppress those shell casings. It was withdrawn without explanation on the day of the hearing. Well, I'm the defense attorney. The last thing I'm withdrawing is a shell casing with someone else's DNA on it attached to the car that was involved in the shooting. One, it goes to the point, Your Honor, of the confusion about who could the shooter be. And if we're trying to figure out, I mean, there's no more serious inquiry in a criminal case than is the defendant the one who committed the acts that were allegedly occurred? And then did the acts occur? Judges, I see that my time is up. I'm so appreciative. And I will save the five minutes for rebuttal for anything else. Any follow-up, Justice Albrecht? No. Justice Davenport? No. Thank you, Your Honor. You do have an opportunity in rebuttal. Mr. Nicolosi. Good afternoon, Your Honors. May it please the court. Mr. Heiderscheidt, the state submits that this court should affirm the post-conviction court's denial of the defendant's post-conviction petition in this case. As I argued in my brief, the state submits that Counsel Morelli was not ineffective in this case. Regarding the alibi defense, as we were fortunate in this case to have a sufficient record with the testimony of Counsel Morelli and his letter to the defendant that happened early on in this case. And Justice Albrecht, to your question to Counsel earlier, I believe Counsel Morelli's credibility was an issue in this case. And we should defer to the post-conviction court that believed Counsel Morelli's testimony and his stance on these issues and use that to support the denial of the petition. Because Morelli made it quite clear that he had never heard of Jose Jr. or Sarah until the post-conviction proceedings. It's clear, based on his letter in 2018, that he was aware of the fact that the defendant had presented or said something to him about an alibi defense. He acknowledged that in the letter, even said in the letter he had not been given any names of anybody who could support or comprise this alibi defense. And clearly, based on his testimony in this deposition that was presented post-conviction, he never learned those names. Those names were never given to him. He had talked with the defendant's mother, but he didn't get anywhere regarding an alibi from her. State submits that how was Counsel Morelli supposed to, required to, do any more investigating of this alibi if the defendant doesn't give him these names. The defendant, and the defendant alone, has this information. And he's the pipeline to Counsel Morelli. If the defendant doesn't give him these names, where is he supposed to get them from? Jose Jr. and Sarah said that they had contacted the office to try to get in touch with Morelli. But as Your Honor has discussed during the defendant's argument, there's no record of these phone calls. Counsel Morelli said they'd never happened. Again, we're talking about whether or not Morelli should have done more investigating. The state submits that we don't know what exactly he was supposed to do if he's not given the names by the defendant of the people who can vouch for his supposed whereabouts during this shooting. Given the fact that he didn't have any real avenues to investigate a possible alibi defense any further, then the presumption of innocence defense that he forwarded at trial was the only reasonable outlet given the strength of the evidence against the defendant at trial. Very briefly, Mr. Heiderscheidt discussed the evidence. Our briefs, I think, go over the evidence very in depth and very clearly. The defendant had the motive to commit this shooting. He had just been in a fight with somebody in this house. We have several different cameras that track a vehicle that was found at the defendant's house. It tracks the movement from Marsales to Ottawa, back to Marsales, is in the area right at the time of the shooting. And of course, Your Honor has discussed with counsel the shell casings on the ground in Marsales on the street where the shooting took place. And then there's more than one on the car. That was ensured in defendant's name. Again, I don't want to belabor this point, but the state submits that the evidence in this case is very strong of the defendant's guilt. So as the post-conviction court had said, even if counsel Morelli had done the things that the defendant post-conviction asked him to do or complained that he should have done, this still would not have changed the outcome of trial. The evidence was very strong. Regarding the jury waiver, counsel kind of tied that to his handling, Morelli's handling of the potential alibi. As I just argued, counsel couldn't have done any more because he didn't have the information with which to do more. Given that, given the posture of the defense at that time, the state would submit that the jury waiver was reasonable, as Morelli testified. He believed that the presumption of innocence would mean more to a judge than it might to a jury. So he advised his counsel or his client to waive jury and go in front of a judge for a bench trial. Counsel was arguing how it's structural error to be denied the right to a jury trial. As I argued very briefly in my brief, because I think it only needed a small period of argument, the defendant was not denied his structural right to a jury trial in this case. This was counsel advising him to waive jury based on what counsel knew at the time. At the time, counsel didn't have any real, legitimate, colorable avenue to present an alibi defense. So given that statements, it was a reasonable trial strategy for counsel Morelli to advise his client to waive his right to a jury trial. Finally, regarding the stipulations that the defendant argues that counsel was ineffective for stipulating to. Of course, in this case, there were several of them. As your honors discussed with counsel Heiderscheit during his argument, there's really not a lot of discrepancy in a lot of these items. And there was really no room to maneuver for defense counsel regarding the time stamp. As Justice Brennan pointed out, there's really no issue here regarding the timing of the events, regarding the DNA and the female shell casing. There were some items here that were positive attributes for the defense, especially that female DNA on the shell casing. That was covered by the defendant in his closing argument, was it not? Yes, yes. That was something that counsel could point to saying, hey, we don't have any witnesses that saw my client do the shooting. So he kind of had his hands tied here. He was able to use what he could. And the state submits, given the lack of information regarding the alibi that counsel had, this is what he had to work with. And he performed reasonably, given the situation. So the state submits that, given all that, post-conviction court was proper in denying the defendant's petition after an evidentiary hearing in this case. Can I just ask a question? Did the defendant, in either his affidavit or supplemental affidavit, ever say that he specifically provided the names of the L by witnesses to his counsel? Not to my recollection, Your Honor. Thank you. If there are any other questions, I'd be happy to answer them. No more questions. Thank you. Thank you. Mr. Hiroshita. Thank you, Your Honor. To that question that I just asked Mr. Nicolosi, in the defendant's affidavits, does he ever say, I gave Mr. Morelli my sister and brother's names as alibi witnesses? I don't believe that language is in the affidavit, Judge. Wouldn't we expect that to be in an affidavit if it actually occurred? And I guess the point of this is not to critique the affidavit. It's that if that happened, Mr. Morelli, if he needs to know who the alibi witnesses are, it's the defendant that should be telling Mr. Morelli the names of the witnesses, right? Well, to that point, Judge, yes, of course, you're going to have to pull that information from the defendant. But let's talk about the letter that was written. The letter was written in April, more than several months before the trial. Mr. Avila is sitting in custody in a jail cell. Mr. Morelli testified at his evidence deposition that he went and visited Mr. Avila several times while he was in jail. And to me, what the letter tells us is counsel knew that there was a potential alibi defense and he didn't take any steps to follow up on it. Was the letter written before or after the visits or in between the multiple visits? The letter was written in April of 2018, which would have been in between the multiple visits. That attorney Morelli testified he had had in his deposition. But counsel, a defendant can say, well, I've got an alibi witness. And the response and the lawyer can't do anything with it without knowing who the alibi witnesses are or where to look for the alibi witnesses. And there's nothing in the affidavit to reflect that the defendant gave them that information, gave him that information. Well, what I would respectfully posit, Your Honor, is that what we have from the record is Mr. Morelli admitting he'd met with Mr. Avila several times and Mr. Morelli's letter references an alibi. And to that extent, the concept of an alibi we know had been brought up before the trial. I don't know why Mr. Morelli would commit that language to writing. But wasn't it explored by Mr. Morelli, at least with respect to the mother? I don't know that that's true. I don't know that that's true with regard to which mother. The mother... Did Mr. Morelli testify to that in his evidence deposition? Mr. Morelli's deposition, he testified to Mr. Avila's mother, Linda Avila. He said that there was a conversation with her and he didn't think that she would make a good alibi witness. That makes sense in the context of Sarah Marchecik's testimony. And this is where it gets to the case law. It doesn't put it on the defendant if the lawyer knows there's an alibi. If the lawyer knows there's a potential alibi, I sit down with my client and I say, who are your alibi witnesses? Where are they? So I can go vet them. And this all could have been avoided with one other letter from the attorney saying, I've vetted your witnesses. They don't, they're not telling me what you're telling me. And I can't present false information to a court. But your client's affidavit never suggests he gave those names to Mr. Morelli. The letter suggests he referenced an alibi to Mr. Morelli. And at that point, what I'm stating for this court is that that burden then shifts to Mr. Morelli's shoulders to vet the alibi defense under the existing case law in Illinois that's been cited in our briefs. But how does a lawyer know who to vet or discuss the alibi with? There's no suggestion that, hold on, let me finish my question for the record. If there's no suggestion that the names were provided. The trial court's ruling on that point is silent. The trial court makes no finding as to whether... Well, we're sitting here now looking at the record. We're looking at the affidavits provided by the defendant. Sure. And there's no suggestion. What you would expect, if it happened, the easiest thing to include in those affidavits is I gave these two names to my lawyer and he didn't do anything about it. We're not seeing it. Well, Mr. Avila's first affidavit is prepared by him. He's a lay person. And I always go back to the language in Gideon v. Wainwright about that. Well, I'm not going to pick on his counsel because I think it was you, but there was a supplemental affidavit. There is a supplemental affidavit too, Judge. But my point would be under the existing case law that when Mr. Morelli is informed and he knows there's a potential alibi, the burden now shifts to him to investigate it. He knew where Mr. Avila was. Mr. Avila was in custody the whole time. He referenced several meetings with Mr. Avila. And all he had to do is say, who are these people? And the record is, I take your point, Judge, the supplemental affidavit doesn't say, I told them these two names. I think we can infer that from the testimony of the two witnesses who came in and said, we're his potential alibi witness. And it seems a stretch, and I see the red, may I finish my answer? Absolutely. It seems a stretch to me when reading all of the affidavits and the pleadings in here that Mr. Avila said, I have an alibi, but then was completely silent and said no more. And based on the number of meetings with Mr. Avila, Mr. Morelli, who has been a lawyer for more than four decades, who is a judge, who is a public defender, who is a state's attorney, who knew this cold backwards and forwards, all he had to do was follow up on this. And he chose not to do it, and the record shows that. And we know that from the judge's ruling, saying, I know alibi was discussed. He chose not to go look at those routes. Your Honors, it has been a privilege to argue before you. Thank you so much for your time. One moment. Any additional questions? No. Justice Davenport? No. Thank you. Thank you so much. The court thanks both counsels for a spirited argument. We will take the matter under advisement and issue a decision in due course. Thank you very much.